will proceed to the first case, SEIU v. Trump. And, Council, I will give you a one-minute warning. Thank you, Your Honor. May it please the Court. This is Danielle Leonard representing appellants SEIU Local 200U and SEIU. I'll start with the issue that's at the heart of the procedural APA claim. The APA's notice and comment procedures apply to administrative rulemaking even where the President has dictated the content of the rules. If a President can remove rulemaking from the formal procedures by telling agencies what he includes by way of an executive order, a directive, or a meeting behind closed doors, there would effectively be no procedural requirements for rulemaking under the APA. First, there can be no real dispute here that the content of this rulemaking, that what the administration is attempting to do is a rulemaking, that the content would qualify if OPM had done this by itself. So the real issue here is, did the President's executive order somehow make law, make law that removes OPM's actions, implementing the President's orders, from the scope of the APA notice and comment? And, first of all, executive orders are instructions to the President's subordinates. They are not law. Who would otherwise would violate federal constitutional principles? This comes down to whether... Is it not... This is Judge Shin. Isn't it a little bit different in the area of federal labor relations? I mean, in fact, the whole thing started with, by executive order, right? So it comes down to the question. Yes, prior to the CSRA in 1978, labor relations were governed by a series of executive orders. And the question is whether legislative authority delegated to the President, because the President cannot make law through his own constitutional authority. There's no dispute about that. Legislative authority, whether that legislative authority has constraints. And the constraints, those bounds have been overstepped here. And the answer is absolutely yes. The first and foremost constraint... ...is that it does not curtail the President's authority to prescribe regulations for the conduct of executive branch employees. It says that it doesn't curtail pre-existing authority unless it does so expressly. And the argument is that in the 1978 CSRA, that is exactly what Congress did. It curtailed that expressly. And the way that it did so procedurally... In what way? This is Judge Radji. In what way? I just want to make sure I understand what you're saying is the limitation imposed by statute on the President's authority. Absolutely, Your Honor. There are two. The first is procedural, and then there's a whole set of substantive restrictions. But procedurally, 1103 and 1105, where Congress created OPM, it created OPM to be a clearing house for all of the regulations that apply to the federal employment, including the rules set by the President. In 1103 and 1105, Congress decided the very question that is before this court, which is, does notice and comment apply when OPM executes the President's rules? This is the system that Congress has set up. That is a procedural constraint. And indeed, it is one of the very purposes of the CSRA. The purpose of that statute was to impose transparency, regularity, and procedural and substantive fairness on the rules to remove them from the political process. Again, I want to be clear on this procedural argument. So is it your position that the President's directives, the orders that are at issue here, are themselves subject to 1103 or 1105? Or rather, that any regulations that may be promulgated by Congress as a result of those orders are subject to 1103 and 1105? Our position is not that the President's executive orders are subject to 1103 and 1105 in the way that I believe Your Honor is asking. Our position is that... I'm sorry, you're breaking up on my end. And so I didn't hear whether you're saying that yes, they are or no, they're not. I'm sorry to have to ask you to repeat that. I apologize. Can you hear me, Your Honor? Yes, yes. Okay, terrific. It is not that 1103 applies directly to the executive order in the sense we're not applying the APA to the President's actions. Right, okay, thank you. It applies to OPM's actions, quote, executing the President's rules. The system that Congress set up, when the President decides the content of the rules under this delegation of authority, of course subject to the substantive constraints, when the President does that, the system that opposes the duty and obligation on OPM to execute the rules. That is the final step. Counselor, could you slow down a touch, please? I'm sorry, Your Honor. I have short time and I know I'm trying to speed through this. Congress set up a system specifically where OPM executes the President's rules. This is what makes this case very different from the circumstances in, for example, Franklin, where the President's decision was at the end of the line. Here, the President makes the decision first, and then Congress says, OPM then executes those rules, and where OPM does that, it is subject to notice and comment. That is the express determination of Congress, and that is why the attempt to circumvent the APA, which is what the President and his administration have attempted to do here, is not consistent with the system that Congress has set up. That is the whole question. What is the scope? Did Congress impose procedural constraints on the scope of legislative delegation to the President? It absolutely did here through 1103 and 1105. As I said, that's consistent with the entire purpose of the CSRA, the entire purpose to impose transparency, regularity, and fairness. Now, this argument, and then secondly, no court has ever accepted the novel argument that the government is making here, that an executive order can make law that then creates everything that follows from that becomes interpretive. That is not the way the courts apply the APA. Judge Radji, as you wrote in the Time Warner Cable decision, it is not the label that the administration places on the exercise of administrative power. It's what they actually do. It is the content of these rules that determines the question. One minute. This argument is separate and apart from the substantive invalidity of the rules. I'm happy to address any further questions that the court may have about that, but you can reach and reverse the district court's decision on the procedural question without reaching the substantive invalidity. Of course, that's another reason why the actions here, why the district court should be reversed. Thank you. Well, do you want to talk about why we shouldn't be persuaded by the D.C. Circuit's reasoning in AFGE that the FLRA review scheme precludes review of a substantive APA claim here? I'd be happy to, Your Honor. The reason is that Congress and the CSRA never removed APA jurisdiction from this court. That's the entire question, and the AFGE case did not address the APA. In order to conclude that Congress and the CSRA, by setting up its administrative agencies, removed jurisdiction, longstanding jurisdiction from the court to consider APA claims, the court would have to ignore the text of the CSRA itself and the APA. The text of the CRSRA contains no less than three cross-references to the APA. That is a strong indication that it's basically not an issue that was addressed in AFGE. And the APA itself, in 559, 5 U.S. B. 559, it says that no later statute shall remove jurisdiction for judicial review unless it does so expressly. The government's entire argument here under Thunder Basin is that it is an implied removal of jurisdiction. There is no argument that the CSRA expressly does so. They cannot reconcile that with 559, period. But even if we're in Thunder Basin territory, the court must look at the text of the statute, and that is why the APA is different. The case that they rely on primarily is the Air Force case from the D.C. Circuit, where there was an APA claim. But the court, the D.C. Circuit in that case, resolved this issue without ever looking at the text of the CSRA or the APA. That is a profoundly incorrect statutory interpretation analysis. You must start with the text. And here, you can only conclude that the CSRA, that Congress in 1978 would have wanted to remove APA jurisdiction if you ignore the text of the statute. I understand... Our court has not conclusively decided whether the principles of Thunder Basin apply to a substantive APA claim. But why wouldn't they? So for the first reason that I just discussed, that the principles of Thunder Basin apply only to implied removals of jurisdiction, not express. And there is no express removal, which is required by 559 of the APA. Well, is that the standard, or does it have to be fairly discernible from the statutory scheme that the APA claim is to be channeled through FLRA review? Isn't that the standard that Thunder Basin tells us to follow? That is the standard for an implied removal, Your Honor. So the first point I'm making is that the APA itself, that someone needs to reconcile the 559 with the Thunder Basin analysis. And one way of doing that is by saying there simply is no express removal of jurisdiction in the CSRA. And that ends the question under the APA. But even if the court were to say implied removals are permissible and somehow reconcile that with 559, which is difficult to do, the principles of Thunder Basin require, as Your Honor is absolutely right, it's fairly discernible. But it's fairly discernible from the text, purpose, and structure. The text, as I've discussed, of this statute cross-references the APA. The purpose was to impose fairness, substantive and procedural fairness, and regularity. There's no interpretation of removing APA jurisdiction or the court's jurisdiction for considering substantive APA questions. That is consistent with either the text or the purpose. So all the government has is structure. And that's where the Thunder Basin factors come into play. You look at whether the structure of the statute and the administrative channels that they set up allow for meaningful judicial review and whether the claims are wholly collateral. And under this court's analysis in Tilton, there is no meaningful judicial review of many of the issues that would be presented here. There's no ability at all, at all, in the administrative procedures. All right. You're well over your time. Let's hear from the government. You have two minutes for rebuttal. Thank you. Good morning, and may it please the court. This is Joe Busa on behalf of the government. There are a number of issues that were just raised in my friend's opening statement, and so I think I'd like to jump in and address first the last issue that was being discussed, and that is channeling of substantive APA claims for Thunder Basin review. The entire point of Thunder Basin review is that agency action, which otherwise would through specific administrative and judicial review procedures, and it doesn't matter which claim or which statute you cite to seek district court jurisdiction. The general federal question jurisdiction under 28 U.S.C. 1331 is displaced for claims falling within the scope of that review procedure. Now, Chief Justice Roberts in Fornaro v. James made clear that the APA does allow for implied displacement of its judicial review procedures by these kinds of highly reticulated administrative review regimes. Section 702 and 704 expressly allow for that kind of implied displacement of judicial review and shunting into this other administrative review regime. That makes sense given that the complaints in both Elgin, in the Supreme Court's case Elgin, and this court's case Tilton, both invokes the APA. That was not thought to be an obstacle in those cases, and it should not be an obstacle here. Turning to the procedural issues that my friend raised at the beginning of her time arguing, she largely relied on sections 1103 and 1105 of Title V of the United States Code in claiming that somehow Congress required the president when creating civil service rules to, instead of creating those rules himself, as he has always been allowed to do under 7301 and other important statutory fonts of authority, instead Congress told the president, well, you actually have to whisper in OPM's ear, and OPM will be the one to actually create those rules to notice and comment. Section 1103 does no such thing. The district court got this just right. It noted that 1103 paragraph A, section 5, says that OPM shall be in charge of the civil service rules and regulations of the president and of the office. So there's a distinction between rules created by the president and rules created by the office, and 1103B says only those rules proposed by the rules created by the president, and the text of these EOs makes clear that they are self-executing. They have already created rules of conduct for employees to follow. That is wholly consistent with a very long history in this area. As my friend on the other side does not dispute, prior presidents stretching back decades have created government-wide rules through EOs regarding smoking in federal buildings, drug testing federal employees, and ethics regimes, and the FLRA has long held that those EOs created government-wide rules that displace the duty to bargain over anything else. And so it's quite a remarkable argument to suggest now that actually it was recently discovered that the CSRA and the FSL-MRS actually impliedly displaced the area, and as we noted in our brief, the CSRA actually expressly provides otherwise. It preserves all of the president's power unless expressly displaced. And so just to summarize, the Thunder Basin Review Regime channels for administrative consideration all of these substantive arguments. Plaintiff's main argument here is that they've got a procedural challenge to these OPM guidance documents. We think that's properly challenged as well. The D.C. Circuit held that a guidance document where a plaintiff wants to say, well, that's actually a legislative rule. It should have gone through notice and comment. That too gets challenged into the administrative regime because there is meaningful review on the back end from a final order of the FLRA, and that's what should happen here as well. That said, I'm happy to take any questions the Am I right in construing these executive orders that are at issue to all work in the future, that is to limitations that may be put on the availability of grievance and arbitration procedures in future CBAs? Yes, Your Honor. All of these EOs... So none of these executive orders pertain to existing collective bargaining agreements, or am I wrong in that? No, you are correct. The statute actually forbids a government-wide rule to allocate an existing CBA, and the EOs expressly recognize that they do not affect existing CBAs. So now, would that mean that unions who have issues with some of the limitations that might be imposed would be able to challenge in an unfair labor practice or otherwise some challenge to these kind of procedures being subjects of CBA negotiations, or am I wrong in that? You are absolutely right, Your Honor, and I think it's worth going through the three mechanisms by which all of plaintiffs' claims can be raised in front of the FLRA. You know, there are negotiability proceedings in which, you know, let's say a union says, hey, we're negotiating over a new collective agreement. I would like to bargain over having official time to lobby Congress, and the government could then say, well, we've got an EO that says we're not going to allow that, so we're not going to negotiate over it. The union can then file a negotiability proceeding with the FLRA, which could then decide whether that instruction conflicts with the FLRA's own statute, the SSL-MRS, and there would be more than enough time for meaningful judicial review on the back end, and it's profound. I was just going to say, so play this out. They lose. They pursue every administrative review possible. In the end, they can bring it to an appellate court? That's exactly right. 5 U.S.B. 7123A allows for direct review. I just wanted to make sure I understood the practical way this all works out. Okay. Yes, and so that's, we just discussed negotiability proceedings. Those can bring these issues before the FLRA. Unfair labor practices charges can also bring all of these issues before the FLRA, and also, importantly, grievance proceedings can bring all of these claims before the FLRA, including the claim that the government's rules precluding grievances over certain subjects, such as performance reviews. If the allegation is that that government-wide rule violates something in the SSL-MRS, well, the SSL-MRS specifically says that grievance procedures can be used to adjudicate alleged violations of the statutes itself, and so all three of those mechanisms are in play, and they can and should seek judicial review of any adverse order under 5 U.S.B. 7123A. Okay. What about the procedural challenge under the APA? I mean, aren't some of these challenges collateral to the statutory scheme? In terms of the jurisdiction question. Right, I understand. Thank you, Your Honor. This so-called procedural challenge really is substantive through and through. I mean, plaintiffs have to identify a legislative rule in order to say that that thing has to go through notice and comment rulemaking. They say that these... Well, but the question of whether the rule is a legislative rule, I mean, is that something that a district court would have jurisdiction to decide? We think the answer is no. You're assuming it is a legislative rule, but you're assuming it is a legislative rule, and isn't that an issue? No, Your Honor. Actually, our position is it's not even a rule at all. If it were a rule, it would be interpretive, not legislative. But this very issue was considered and decided by the D.C. Circuit in Arch Cole, where the allegation was that a guidance document issued by an agency was a legislative rule, should have gone through notice and comment rulemaking. And the D.C. Circuit held that that contention, too, was channeled into the Thunder Basin Administrative Review process. But how does that one play out? How does that one play out? The argument of the union is this is a legislative rule. It is subject to notice and comment. I know you disagree with that, but how do the parties pursue that claim and ultimately get to a court? Right. It would be the same way that the part of the Supreme Court said in Elgin that the plaintiffs should pursue a constitutional claim about denial of equal protection against the Selective Service Registration Statute. There, the Supreme Court held that even if and whether or not the MSPB could consider an award release on that claim, the Federal Circuit on review of the MSPB's final order certainly could. And for that reason, that legal issue was channeled for review along with all the other legal issues plaintiffs might want to raise. So it would be the same thing here. The unions could bring their disputes to the FLRA, and they could say that the government-wide conflict with the statute. They could also say that somehow OPM's guidance documents, if an agency negotiator were to rely on them separate and apart from the EOs for some reason that's hard to imagine, well, then the plaintiffs could argue that those guidance documents are procedurally invalid and cannot be relied on in that way. The FLRA would decide for itself in the first instance whether it could consider that kind of legal claim. But certainly, just as in Elgin, the reviewing court on review of the final order would be able to consider that argument alongside... Again, I'm asking you for a little practical guidance. I understand that Elgin says threshold questions that may accompany a substantive APA claim can be heard as part of the FLRA process. So does that mean that it is when the union finds itself in a CBA negotiation that it wants to challenge and says it goes to the FLRA and challenges the refusal to negotiate over these issues? And as part of that, it then says, and by the way, there was no notice and comment, but that's how it would play out. That's exactly right. That's what the DC circuit says at Arch Cole. And we think that's the right answer here. And I just want to underscore that the... By the way, hold on a second. I neglected to give you a one minute warning, but you're over your time, but go ahead and go ahead and finish up. Thank you, your honor. I'll wrap up quickly. I just want to underscore that the so-called procedural challenge here really is substantive through and through. The crux of a truly procedural challenge doesn't hinge in any way on the substantive validity of the rules at issue, but that is plaintiff's sole argument for why they say that these guidance documents, which only summarize the EOs and purport to have no independent legal effect, should nonetheless be read contrary to their text as if they purport to propose substantive... What they point to say would be substantively invalid rules. That makes a hash of the statute. A procedural challenge is different from a substantive challenge. This one really is a substantive challenge and should be channeled. Thank you, your honors. Thank you. We'll hear the rebuttal. Thank you, your honors. I think the practical questions really answer the question of whether there is meaningful judicial review of the procedural APA claim. And for purposes of that jurisdictional analysis, I would ask the court to assume that the appellants are correct, that there is a valid procedural claim, and then ask the question, how practically would this move through the administrative channels? And did Congress intend for this to be so? The answer is absolutely not. There is no mechanism. There is no mechanism for... I'm sorry. I may have missed something. Why is that so? Why doesn't it play out as I hypothesized to your adversary? I want to make sure I understand this. Sure. The first reason is that all of these mechanisms that the government is relying on are for claims against the agencies, the employing agencies, not against OPM. There is no mechanism to get the relief that the APA provides, which is to set aside OPM's rulemaking. There is no mechanism. And Congress did not create... Why is that so? When you ultimately wind up in front of an appellate court, wouldn't the appellate court be able to say, you can't be required to follow this rule because this rule was not subject to notice and comment? Why would that not happen if you have a meritorious claim? So it wouldn't happen because OPM is not a party, Your Honor. But it also wouldn't happen because that relief... It wouldn't be meaningful relief to say at the end of the process that notice and comment didn't happen. The APA, the APA, the relief under the APA is to hold and set aside that rule. And there are additional... And that would not be available until the end of the process. And that is not meaningful review at all. Even from here, the government has described three of these mechanisms in inaccurate ways. The primary mechanism that they are saying is available is the unfair labor practice claim. And there is something incredibly crucial that the court should understand as a practical matter. That does not automatically get adjudicated by the FLRA. It requires the general counsel to issue a complaint. And that decision is unreviewable. No complaint will ever issue. No FLRA order will ever happen with respect to unfair labor practice claims when the general counsel applies the executive orders. There will be no review of any procedural or substantive APA claim ever in court as a result of that. Moreover, the grievance procedures... I'm sorry, that's stated so conclusively, but where would I look for authority to support that statement? So the authority to support the statement that the general counsel... No, no, you're saying there's never a way a court would never look at this, never, never. I want to know where I look for support for that conclusion that you just urged on us. Sure. One of the cases from this circuit is Rizzatelli, which was Judge Winter's decision in which the decision by a general counsel not to issue a complaint is not reviewable, Your Honor. And there's a lot of other... There are a lot of... There's no dispute about that proposition. So the general counsel would deny every... Setting aside the fact that there is no general counsel and hasn't been for four years, the general counsel under the statutory scheme can deny... This is exactly like the subsidiary officer decisions in free enterprise, the Supreme Court's decision, which said that it will never get to the commission. The SEC will never decide this. That is exactly the case here under the... Is the general counsel ordering a complaint the only way this matter comes up? This is why I went through my understanding with your adversary. I would think it would come up when you are in negotiations and they try... The government tries to negotiate for grievance or other limitations pursuant to these executive orders. You would then challenge it. Why isn't that the way you do it, not by seeking a complaint from the general counsel? Well, that is how you challenge their refusal to bargain is by filing an unfair labor practice claim. That is one of the avenues. Oh, okay. Okay. And he refuses to issue a complaint. That's what you're saying would happen? Yes, under the executive orders. If the charge is that the executive order rules, assuming we're right, either are substantively or procedurally invalid, he won't issue a complaint because he will say under the FLRA decisions that my opposing counsel was just citing that the executive orders are law. It will be... The executive orders are what? Law. Law. And why can't you challenge that then? You go to the next level and you challenge it because the general counsel is wrong. There's no reviewability of the general counsel's decision under the statutory scheme. The FLRA will never issue an order, Your Honor. And that precludes the courts from ever reviewing this. But when you say that that'll never happen, are you saying that it's a practical matter or is that statutory? The question of whether... You mean is it statutory that the general counsel's decision is unreviewable? Correct. It's the same question that Judge Raggi's been asking, what is the basis? What's your citation for that? It is a statutory provision that the general counsel's decision is unreviewable. So the citation... Tell us the statutory provision. The statutory provision is... I believe it's an interpretation of the scope of the judicial review provision, which is 7123. The Rizzitelli case discusses this. It's 212F3-710, Judge Winter's decision. And the point is that the court is asking the question, is there meaningful judicial review of the claims brought in this case? Is there a way through the statute to address that very valid APA claim, assuming that we are correct? The answer is no. The statute did not provide meaningful review. And why does that matter? It doesn't mean that meaningful judicial review under the APA should be foreclosed. It means that there's no indication that Congress intended it to be so. The whole point of this is statutory interpretation. But that's a very different question. And I understand we have to reach out, but now you're telling us that it is legally impossible to secure judicial review at the end of this process. Am I right that that's your argument to us? Not that simply Congress didn't contemplate it, but that it is in fact precluded by law. Because I didn't see that in your papers or at least come away with that conclusion, so I now want to make sure I understand it. There's both a legal and a practical problem in the way that Congress set this up for bringing these APA claims because there is no mechanism to do so. And because some of the things in these executive orders will never make it through the first steps of the process. Yes, that is absolutely right. Some of the things in the should be validly challenged, assuming we're right about the procedural APA claim, will never make it through. So the unfair labor practice problem is one of them. One of the other provisions that the government relies on is the grievance procedure. Well, the government under these executive orders will not grieve certain matters. There will never be an FLRA review where the government will not grieve. So your honor was asking, well, won't this just come up in bargaining? The government is taking the position that they can unilaterally implement these upon the beginning of bargaining. They will refuse to give employees the right to grieve performance matters, that is a right that's in the statute. And then the employees will not be able to ever bring that challenge. They won't be able to get a grievance, they won't be able to get an arbitration, and they won't be able to get the FLRA review of that. So to say that there are three mechanisms is completely untrue. The grievance and arbitration is out. You're well over your time. The court will reserve decision.